## THE BANK OF THE STATE OF ALABAMA v. GIBSON'S ADM'RS.

1. The State Bank is a mere corporation, not invested with the attributes of sovereignty, and like an ordinary creditor must cause a claim, of which it is the proprietor, to be presented to the administrator of a deceased debtor, within eighteen months after the grant of administration.

WRIT of error to the County Court of Dallas.

This was an action of assumpsit at the suit of the plaintiff in error against the defendants on a promissory note, payable to the president and directors of the Bank of the State of Alabama.—— The defendants pleaded, 1. That the cause of action described in the plaintiff's declaration, was not presented to them within eighteen months after letters of administration on the estate of the intestate were granted to them; nor within eighteen months after the same accrued. 2. *Plene administravit.* 3. *Non-assumpsit.* To the first plea, the plaintiff demurred; to the second, there was a replication, and on the third, issue was joined. The demurrer was sustained, and the plaintiff declining to reply, a judgment was rendered in favor of the defendants for costs.

C. G. EDWARDS, for the plaintiff in error—insisted that the

first plea set up what was commonly called the statute of non-claim; and in legal effect, it was a statute of limitations. [Thrash v. Sumwalt, 5 Ala. Rep.; Clay's Dig. 195, § 17; 2 Mason's Reports, 311.]

The State is not bound by any of the statutes, which operate against creditors and other suitors. *Nullum tempus occurrit rei-pablicae* has been frequently recognized in our sister States.—[4 Bibb's Rep. 554; 18 Johns. Rep. 227; 1 Hen. & Munf. Rep. 85; 4 id. 65; 3 Serg't & Rawles' Rep. 188; 4 Mass. Rep. 528; 6 T. Rep. 188; 1 Bla. Com. 247; 1 Coke's Lit. 74; 5 Bac. Ab. 559, 561, 562.]

Although the Bank is the nominal plaintiff, the State is the real party in interest; and the statute of limitations could be no more interposed, than if the State was the plaintiff of record. [Clay's Dig. 77; 1 Scammon's Rep, 106.]

G. W. GAYLE, for the defendant—was proceeding to argue the two first points made by the counsel for the plaintiff in error, when he was stopped by the court. Upon the third point, he insisted that the Bank was not the depository of State sovereignty, and could not claim the privileges incident thereto. This point he said had been repeatedly so ruled. [3 Ala. Rep. 258; Ang. & Ames on Corp. 24, note 1; 9 Wheat. Rep. 907; 2 Peters' Rep. 318; 2 Brockb. Rep. 393; 3 McC. Rep. 377; 1 Hawks' Rep. 36.]

COLLIER, C. J.—In Owen, et al. v. The Branch Bank at Mobile, [3 Ala. Rep. 258,] this court was of opinion that our Banks, of which the State is the exclusive proprietor, are corporations "created for the purpose of banking, not on the credit of the State, but upon a fund provided for that purpose." That they could sue and be sued, and were invested with the attributes necessary to the existence of a corporation. Had we there attained the conclusion that the note issued by the Bank were in point of fact emitted by the State, we must have adjudged that these institutions were brought into existence by the legislature in violation of the constitutional restriction upon its power, which inhibits the emission of bills of credit by the States. [See Craig v. The State of Missouri, 4 Pet. Rep. 410.]

The constitutionality of a law establishing a Bank, of which the State was the sole proprietor, came directly before the su-

preme court of the United States, in Briscoe v. The Common-
wealth Bank of Kentucky, [11 Peter's Rep. 257.] In that case,
the capital was two millions of dollars, and to be made up of va-
rious funds and receipts from several sources of revenue, which
the statute particularized; and the Bank was authorized to do the
ordinary business of such an institution, such as discounting notes,
&c.; but its debts were not to exceed double the amount of its
capital. The court held that the Bank was a corporation; that its is-
sue were not made on the faith of the State, but they were to be
paid in gold or silver on demand, from a fund provided for that
purpose, and placed under the control of the directory.

In the U. S. v. The Planters' Bank of Georgia, [9 Wheat. Rep.
907,] the court were of opinion, that "the State does not by be-
coming a corporator, identify itself with the corporation. The
The *Planters' Bank of Georgia* is not the *State of Georgia*, al-
though the State holds an interest in it." "*Again*, it is a sound
principle, that when a government becomes a partner in a trading
company, it divests itself so far as concerns the transactions of
that company of its sovereign character, and takes that of a pri-
vate citizen." [See also the Bank of Kentucky v. Wister, et al.
2 Peters' Rep. 318.] This reasoning we think, applies with all
force where the State is the sole corporator, as well as where it is
associated with others. The Bank of the State is a mere crea-
ture of the legislature intended "to provide," in the language of the
preamble of the charter, "for the safe and profitable investment of
such public funds, as may now, or hereafter, be in the possession
of the State, and to secure to the community, the benefits, as far
as may be, of an extended and undepreciating currency." [Clay's
Dig. 77.] It cannot be endured, that the legislature, which is but
the mere machinery of government, should be allowed to confer
upon a monied corporation, established by itself, any portion of
the sovereign power, which was inherent in the body politic.—
Whether it would be competent to prescribe a different limitation
to the recovery of its demands, from that which is applied to in-
dividuals and private corporations, is a question that need not be
considered; for a dispensation from the influence of such laws is
here claimed, not in virtue of expresses legislation; but as one of
the prerogatives of government.

In the Bank of South Carolina v. Gibbs, [3 McC. Rep. 377,] the
question was, whether a simple contract debt due the Bank, was

a debt due to the public, within the meaning of the act, relative to executors, &c. which entitles the State to a priority of payment. The court determined, that it was not a debt due to the public, and that although the Bank was owned entirely by the State, it could claim no priority on that ground. And in the Bank of North Carolina v. Clarke, &c. [1 Hawks' Rep. 36,] it was decided, that the State Bank of that State, was a mere private corporation.

The only case that we have been able to find, in which a different doctrine is maintained, is the State Bank of Illinois v. Brown, et al. [1 Scammon's Rep. 106.] There the court cite some of its previous decisions, which determined that the directors of the Bank die not act for their own benefit, and that their omission and neglect did not work an injury to the State; that a release from all debts due to the State was a release of a debt secured to the Bank by mortgage; and that the State is not barred by a statute of limitations, unless expressly named. It is also said, that "by the statute creating the State Bank, it is declared, that it shall belong to the State of Illinois. Hence," say the court, "it follows that the people of Illinois are the real plaintiffs, and are alone entitled to the benefit of the recovery." This reasoning, it must be admitted, is unsatisfactory, and altogether inconclusive; it entirely loses sight of the grounds upon which a State is held not to be bound by a *statute of limitations*, which does not apply to it *eo nomine*. The decision rests alone upon the basis that the State being the sole proprietor of the Bank, a debt due to the latter, is due to the State, and not barred by the statute. This conclusion cannot be supported.

The judgment of the county court of Dallas, is correct in law; and is consequently affirmed.