PER CURIAM.
Diallo L. Evans, an inmate in a state penitentiary, sued several correctional officers. In his complaint, he alleged that he was struck by a van driven by Steward Isaac Cotton, a correctional department employee, and that Officer Quenton Wor-rell, Sergeant Katie Allen, and Officer Leeposey Daniels deliberately attempted to cover up the incident to protect Cotton. (Cotton and the officers are sometimes referred to collectively as the “correctional officers.”) Evans also alleged that Allen had acted with deliberate indifference to his medical needs by failing to refer him to the health-care unit after he was struck by the van. He sought both compensatory and punitive damages for the alleged wrongs. The trial court entered a summary judgment for the correctional officers. Evans appealed to the Alabama Supreme Court; that court transferred the case to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’” Lee, 592 So.2d at 1038. “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary-judgment standard.
Several facts are basically undisputed. On March 8, 1999, while Evans and several other inmates were assembled in a parking lot awaiting check-out onto a road crew, a van driven by Steward Isaac Cotton ap *622 proached the group on its way to the kitchen. Cotton slowed down and blew his horn at the inmates, who were in his path, but he continued to drive through the lot. Officer Quenton Worrell, who was checking out the inmates, called out to Cotton to stop the van, but Cotton proceeded on to the kitchen, apparently unaware that he might have hit one or more of the inmates.
Whether any inmates were actually struck by the van is disputed; however, according to the statements attached to the “Institutional Incident Report,” at least one officer, Worrell, witnessed contact between inmate Shaun Miller and the van. Worrell’s statement indicated that another inmate, Karlus Davis, reported to Worrell that inmate Davis had been knocked aside by the van. Worrell contacted Sergeant Katie Allen, who responded by coming to the scene and sending inmates Miller and Davis to the healthcare unit to be examined. Allen later reported the incident to her superiors, so that an investigation could be conducted. Although inmate Evans’s complaint indicates that he informed Allen that he, too, was hit by the van, Allen’s statement does not indicate that she spoke with inmate Evans. Officer Leeposey Daniels’s statement indicated that inmate Evans reported to Daniels at approximately 5:00 p.m. on the day of the incident that inmate Evans had been struck by the van that morning. Daniels further stated that he had referred inmate Evans to the health-care unit for examination.
The correctional officers supported their motion for summary judgment with a copy of the institutional incident report, to which were attached the statements of the various correctional officers and the statements of the inmates involved in the incident; affidavits from the correctional officers; the medical records of the inmates; and an affidavit from inmate Shaun Miller ín which he stated that the inmates had conspired to “get rich off the State” and that they had fabricated most of the story. The correctional officers argue that this court need look no further that the defense of immunity and the affidavit of inmate Shaun Miller to determine that the summary judgment was properly entered.
The correctional officers argue that they are entitled to immunity. Indeed, the claims against them in their official capacities are prohibited by the doctrine of absolute immunity because they are essentially claims against the state prohibited by Art. I § 14, Ala. Const, of 1901. See Ex parte Cranman, [No. 1971903, November 24, 1999]. However, the question of their immunity from the claims asserted against them in their individual capacities, known as qualified immunity, turns on whether they were engaged in performing a ministerial act or in performing a discretionary function. Ex parte Cranman [see reporter’s note to earlier citation]. Although it appears that qualified immunity applies to Worrell, Allen, and Daniels, we need not decide that issue because inmate Evans has failed to produce or point out evidence that creates a question of fact as to Wor-rell, Allen, or Daniels’s liability.
Inmate Evans produced no evidence in response to the correctional officers’ motion for a summary judgment. The failure of a nonmovant to produce evidence in opposition to a summary-judgment motion does not, in and of itself, entitle a movant to a summary judgment. See Ex parte City of Montgomery, 758 So.2d 565 (Ala.1999). We must determine whether the correctional officers “made a prima facie showing that there was no genuine issue of material fact.” Ex parte City of Montgomery, 758 So.2d at 569. Inmate Evans’s allegations that Worrell, *623 Allen, and Daniels deliberately attempted to cover up the incident and that Allen was deliberately indifferent to his medical needs are not supported by any evidence in the record. The undisputed evidence reveals only that Evans reported to Daniels that he had been struck by the van and that he made this report not in the morning, when the incident occurred, but later in the afternoon after he had returned from working on the road crew. In addition, the evidence submitted reveals that the incident was investigated and that inmate Evans was treated by a doctor for his complaints. Therefore, the correctional officers made their prima facie case. The summary judgment, insofar as it relates to inmate Evans’s claims against Worrell, Allen, and Daniels, was properly entered, and, as to those defendants, it is affirmed.
In his complaint, inmate Evans claims that Cotton committed a “hit and run.” Essentially, inmate Evans is alleging that Cotton committed the tort of assault and battery. The evidence submitted by the correctional officers indicates that the van may have struck at least one inmate. Inmate Evans’s statement concerning the incident is attached to the institutional incident report; in that statement, he says he was struck by the van. Inmate Evans’s medical records indicate that he reported being struck by the van, that he thought he had injured his back, that there were no external signs of injury, and that the doctor prescribed medication and restricted inmate Evans to light duty. Worrell’s statement indicates that he saw the van hit inmate Miller. Although the affidavit from inmate Miller indicates that inmates Davis and Evans lied about being struck by the van, that affidavit does not entitle Cotton to a summary judgment on Evans’s claim. The correctional officers failed to make a prima facie showing that there exists no genuine issue of material fact concerning whether inmate Evans was injured by being struck by Cotton’s van. In fact, the evidence submitted by the correctional officers creates, a question of fact concerning whether Cotton actually struck inmate Evans with the van.
Because Cotton was not entitled to a summary judgment based on the evidence submitted, we must consider whether Cotton is entitled to immunity. Although Cotton is indeed immune from suit in his official capacity, we must determine whether he is entitled to qualified immunity. As we stated previously, the question whether Cotton is entitled to qualified immunity turns on whether he was engaged in a discretionary function or in a ministerial task while he was driving the van. Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala.1998). “‘Discretionary functions are characterized by planning and decision-making, while ministerial functions are characterized by operational tasks.’ Where the exercise of the defendant’s function requires due care, rather than difficult decision-making, the function is merely ministerial.” Coleman, 720 So.2d at 909 (quoting Ex parte Alabama Dep’t of Forensic Sciences, 709 So.2d 455, 458 (Ala. 1997)). In Coleman, the supreme court determined that “trying to avoid potholes while driving a motor vehicle is a ministerial, not a discretionary, function.” Id. Based on the supreme court’s decision in Coleman, we conclude that Cotton was not performing a discretionary function while driving the van through the parking lot. Therefore, Cotton was not entitled to qualified immunity, and the summary judgment, insofar as it relates to Evans’s tort claim against Cotton, must be reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.
YATES AND MONROE, JJ., concur in part and dissent in part.